UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BETH P. GESNER
CHIEF UNITED STATES MAGISTRATE JUDGE
MDD_BPGchambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4288
(410) 962-3844 FAX

March 30, 2022

Lawrence P. Demuth, Esq.
Mignini Raab Demuth & Murahari, LLP
429 S. Main Street
Bel Air, MD 21014

Kavita Sahai, Esq.
Social Security Administration
Altmeyer Building, Room 617
6401 Security Blvd.
Baltimore, MD 21235

Theodore A. Melanson, Esq.
Mignini Raab Demuth & Murahari, LLP
606 Baltimore Avenue, Suite 101
Towson, MD 21204

Subject:  Monica E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration
Civil No.: BPG-21-1825

Dear Counsel:

Pending before this court, by the parties' consent (ECF Nos. 3, 5), are plaintiff's Motion for Summary Judgment ("plaintiff's Motion") (ECF No. 12), defendant's Motion for Summary Judgment ("defendant's Motion") (ECF No. 13), and plaintiff's Response to defendant's Motion for Summary Judgment ("plaintiff's Reply") (ECF No. 14). The undersigned must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by statute, 20 C.F.R. § 416.927(d)(2). I have reviewed the pleadings and the record in this case and find that no hearing is necessary. Loc. R. 105.6. For the reasons noted below, plaintiff's Motion (ECF No. 12) and defendant's Motion (ECF No. 13) are denied, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further consideration in accordance with this opinion.

**I.    Background**

On May 20, 2019, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on May 17, 2019. (R. at 156-62). Her claim was initially denied on July 29, 2019 (R. at 89-92), and on reconsideration on April 21, 2020 (R. at 96-97). After a hearing held on January 13, 2021, an Administrative Law Judge ("ALJ") issued a decision on February 26, 2021, denying benefits based on a determination that plaintiff was not disabled. (R. at 12-32). The Appeals Council denied plaintiff's request for review on May 25, 2021, making the ALJ's opinion the final and reviewable decision of the Commissioner. (R. at 1-6). Plaintiff then filed the current suit, challenging the Social Security Administration's decision on the grounds that the ALJ failed to properly: 1) support plaintiff's residual functional capacity

Monica E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration
Civil No.: BPG-21-1825
March 30, 2022
Page 2

("RFC") with substantial evidence; and 2) evaluate whether plaintiff's impairments met the requirements of Listing 1.04A.

## II.  Discussion

First, plaintiff maintains that the ALJ failed to include an evaluation and discussion of her mental impairments in the RFC, citing SSR 96-8p. (ECF No. 12-2 at 22-27). The RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "Only after that may [the RFC] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. "In performing this assessment, an ALJ 'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). "In other words, the ALJ must both identify evidence that supports [their] conclusion and 'build an accurate and logical bridge from [that] evidence to [their] conclusion.'" Id. (citing Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). SSR 96-8p requires, in relevant part, that:

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

In this case, the ALJ determined that plaintiff had medically determinable mental impairments of depressive and anxiety disorders at step two, but found that they caused only mild limitations in the four functional areas: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. (R. at 18-20). During this analysis, the ALJ noted plaintiff's treatment records, consultative examination, and daily activities. Because the ALJ determined plaintiff's limitations in the four functional areas were only mild, the ALJ found that plaintiff's mental impairments were nonsevere. (Id.) In plaintiff's RFC, the ALJ did not include any specific restrictions, or discuss or explain why no restrictions were necessary, with regard to plaintiff's mental impairments. (R. at 24-25). This clearly violates the requirements of SSR 96-8p, because it is not clear whether the ALJ considered the limitations imposed by plaintiff's mental impairments, even though nonsevere, and whether they would limit plaintiff's ability to perform basic work activities when considered in tandem with her physical impairments. See Anthony M. v. Comm'r, Soc. Sec. Admin., No. SAG-19-651, 2020 WL 434581, at *3 (D. Md. Jan. 28, 2020) ("[T]he ALJ was required to consider the combined effect of Plaintiff's severe and nonsevere impairments in his RFC discussion, including his nonsevere depression and anxiety."). Therefore, remand is warranted on this issue.

<u>Monica E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration</u>
Civil No.: BPG-21-1825
March 30, 2022
Page 3

     Plaintiff also maintains that the ALJ failed to conduct a function-by-function analysis or properly consider plaintiff's side effects of her medications in the RFC. (ECF No. 12-2 at 27-34). The ALJ should undertake more detailed function-by-function analysis to explain how, in conjunction with addressing plaintiff's nonsevere mental impairments in the RFC, all of plaintiff's impairments are accommodated by any RFC restrictions. Regarding plaintiff's argument about plaintiff's side effects from her medications, however, there appears to be skant evidence of these side effects in plaintiff's record. Plaintiff points to her hearing testimony that "the Gabapentin actually makes me sleepy and tired" and a single citation in a treatment record that plaintiff's "Zoloft [was] causing side effects" with no further information. (R. at 47, 836). While the ALJ may choose to address these statements regarding plaintiff's side effects from her medication, this argument is not cause for remand.

     In addition to plaintiff's arguments regarding the RFC, plaintiff also argues that the ALJ erroneously determined that plaintiff did not meet the requirements of Listing 1.04A at step three. (ECF No. 12-2 at 13-21). Step three requires the ALJ to determine whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments describes "for each of the major body systems impairments that [the agency considers] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Listing 1.04 covers disorders of the spine "resulting in compression of a nerve root or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04 also requires the satisfaction of one of three additional requirements identified as Requirements A–C. <u>Id.</u> Requirement A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . ." <u>Id.</u> § 1.04A.

     In this case, the ALJ found that plaintiff had a severe impairments of lumbar spondylosis and lumbar facet arthropathy, among other impairments, at step two. (R. at 18). At step three, the ALJ opined that plaintiff nevertheless failed to meet the requirements for Listing 1.04A and stated that "providers have reported motor, sensory, and reflex examinations within normal limitations." (R. at 20). Plaintiff argues that the record indicates evidence of the required elements of Listing 1.04A, specifically nerve root compression, neuro-anatomic distribution of pain, limitation of motion of the spine, muscle weakness, and sensory loss. (ECF No. 12-2 at 19-20). Specifically, plaintiff maintains that her diagnosis of cervical radiculopathy indicates she has nerve root compression. (<u>Id.</u> at 19) (citing R. at 459). A diagnosis of radiculopathy could indicate nerve root compression. <u>Walker v. Colvin</u>, No. CBD-15-2293, 2016 WL 8669936, at *4 (D. Md. July 15, 2016) ("[R]adiculopathy is defined as 'compression of the nerve root.'" (citing <u>Gale Encyclopedia of Medicine</u> (2008)). Plaintiff also cites to evidence of neuro-anatomic distribution of pain, limitation of motion of the spine, and muscle weakness. (R. at 293-94, 418).

     Plaintiff, however, is unable to establish evidence of motor loss accompanied by sensory or reflex loss, a requirement of Listing 1.04A, despite her arguments to the contrary. Plaintiff

Monica E. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration
Civil No.: BPG-21-1825
March 30, 2022
Page 4

points to a consultative examination which states "Tinel's[1] and Phalen's[2] is noted." (R. at 736). The consultative examiner's report, however, also notes that "[s]ensory is intact." (Id.) Even if plaintiff exhibited sensory loss, there is no evidence that it was accompanied by motor loss (atrophy with associated muscle weakness or muscle weakness). The consultative examiner report indicates "[n]ormal grip and manual dexterity, [n]ormal function and motion to the upper extremities . . . [and] [m]otor [strength] is 5/5 universally." (Id.) Therefore, while other records cited by plaintiff indicate muscle weakness, there are no records that show plaintiff experienced motor loss accompanied by sensory or reflex loss, as required. Accordingly, remand is not warranted on this issue.

### III.   Conclusion

For the reasons stated above, plaintiff's Motion (ECF No. 12) and defendant's Motion (ECF No. 13) are DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further consideration in accordance with this opinion.

Despite the informal nature of this letter, it will constitute an Order of the court and will be docketed accordingly.

Very truly yours,

/s/
Beth P. Gesner
Chief United States Magistrate Judge

---

[1] "The Tinel sign is the result of a simple, noninvasive test that checks for nerve problems. It involves tapping a finger along the problem nerve, which can produce tingling or pain. This sensation is a sign of nerve damage and is called the Tinel sign." What is a Tinel Sign?, WebMD (June 16, 2021), https://www.webmd.com/pain-management/carpal-tunnel/what-is-tinel-sign.

[2] "[The Phalen] test looks for nerve compression when you bend your wrist or ankle. . . . A positive Phalen test happens when you have numbness, tingling, or pain within one minute." What is a Tinel Sign?, WebMD (June 16, 2021), https://www.webmd.com/pain-management/carpal-tunnel/what-is-tinel-sign.